UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **VANCE STUBBS; BRENDA STUBBS,**   )<br>                                                            )<br>         **Plaintiffs,**                           )<br>                                                            )<br>**vs.**                                                  )<br>                                                            )<br>**STATE FARM FIRE & CASUALTY**     )<br>**COMPANY,**                                  )<br>                                                            )<br>         **Defendant.**                         ) | **Case Number 2:12-CV-2186-SLB** |

# MEMORANDUM OPINION

This case is presently before the court on Motion to Remand filed by plaintiffs, Vance Stubbs and Brenda Stubbs. (Doc. 4.)[1] Plaintiffs originally filed this action in the Circuit Court of Jefferson County, alleging that defendant, State Farm Fire and Casualty Company "breached the terms of [plaintiffs' insurance] Policy by refusing to approve and pay [plaintiffs'] full claim," and defendant acted in bad faith. (Doc. 1-2 at 5-6.) Defendant removed this action, invoking this court's diversity jurisdiction. (Doc. 1 at 2.) Plaintiffs filed a motion seeking remand, contending that defendant has not established that the amount in controversy exceeds $75,000. (*See generally* doc. 4.) Upon consideration of the record, the

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that plaintiffs' Motion to Remand, (doc. 4), is due to be denied.[2]

## I. STATEMENT OF FACTS

Prior to April 27, 2011, plaintiffs owned a home in Fultondale, Alabama, which was insured under a homeowner's policy issued by defendant. (Doc. 1-2 ¶¶ 7-8.) Plaintiffs' home was destroyed by a tornado on April 27, 2011. (*Id*. ¶¶ 12-14.) The City of Fultondale found, "A large tree fell on the right side of the structure and jammed the footings into the ground and the walls are cracked; the front porch was lifted and structural iron columns are not in alignment." (*Id*. ¶ 16.) Thereafter, the City condemned the property and plaintiffs were not allowed to stay in their home. (*Id*. ¶¶ 15-16.)

Plaintiffs filed a claim with defendant. (*Id*. ¶ 15.) Defendant paid plaintiffs $33,986.68 – $31,411.54 for structural loss, $1,151.16 for contents loss, and $1,423.98 for living expense loss. (*Id*. ¶ 17.) Plaintiffs allege that defendant's payment was "wrongful because it was not consistent with the facts or the Policy," and that defendant "intentionally misrepresented the facts and the content of the Policy in a bad faith effort to refuse full payment." (*Id*. ¶¶ 18, 19.) They allege defendant refused to pay their "full claim," (*id*. ¶¶ 23, 27, 30), and refused "to approve and pay the claim to the full extent of coverage," (*id*. ¶ 28). The Complaint "demand[s] [a] judgment against State Farm in an amount which will

---

[2]The court informed the parties at oral argument that it was leaning toward granting plaintiffs' Motion to Remand. However, upon further consideration, the court finds the Motion is due to denied.

fairly and adequately compensate Plaintiffs for their damages in such an amount as a jury may assess." (*Id*. at 5; *see also id*. at 6 [including a demand for punitive damages].)

According to defendant's Notice of Removal, the policy limits for the house and its contents is $214,100. (Doc. 1 at 3 n.3.) Defendant alleges that the policy limits – less the amount paid – is the amount in controversy. (*Id*. ¶ 5.) It has not provided the court with any evidence of the amount plaintiffs' claim under the policy, which is the estimated cost to repair and/or replace plaintiffs' home or their personal property.

The policy at issue provides replacement cost coverage for plaintiffs' home. (*See generally* doc. 1-1.) In the Loss Settlement section of the policy, defendant describes how it will determine the amount of coverage in the event of a covered loss:

> [Defendant] will pay the cost to repair or replace with similar construction and for the same use of the premises shown in the Declarations, the damaged part of the property covered . . . subject to the following:
>
> (1) until the actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;
>
> (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the declarations, whichever is less;
>
> (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed . . . .

(*Id.* at 22.)  Under the terms of policy, defendant is not obligated to pay the policy limits simply because the covered dwelling is completely destroyed.  (*See id.*)  It is obligated only to pay the "actual cash value" unless and until the dwelling is repaired or replaced; if the dwelling is repaired or replaced, defendant is obligated only to pay such costs up to the policy limits.  (*Id.*)

As for personal property covered under the policy, defendant will pay the cost to repair or replace less depreciation unless and until the personal property is repaired or replaced; in that case, defendant pays the cost to repair or replace up to the policy limits.  (*Id.* at 23.)  Except, in the case of "antiques, fine arts, painting, statuary . . . which by their inherent nature cannot be replaced with new articles;" "articles whose age or history contribute substantially to their value . . . ;" and "property not useful for its intended purpose," defendant has agreed to pay "market value at the time of loss."  (*Id.* at 23.)

Also, plaintiffs' policy contains the following language:

An estimate of the replacement cost of an insured home or structure is used to establish its value for insurance purposes.  It affects your premium, and what coverage options may be available. . . .

. . .

State Farm does not guarantee that any type of estimate will represent the actual cost to rebuild your home or structure after a loss.  Also, a replacement cost estimate does not dictate the amount of insurance coverage a policyholder must or may purchase.  For many reasons, a policyholder may want to purchase more or less than the replacement cost estimate.  State Farm allows you to choose the coverage limits that best fit your circumstances.

> When a policy provides coverage on a replacement cost basis, following a covered loss, State Farm pays you the "replacement cost" that you actually and necessarily spend to repair or replace the damaged part of the property – subject to the terms of the policy and coverage limits. The replacement cost is not the market value, the purchase price, or the outstanding amount of any mortgage loan. It does not include the value of the land. Rather, replacement cost is the cost, subject to the terms of the policy, of repairing or rebuilding the damaged part of the insured structure, not including desired or required upgrades or improvements.

(*Id*. at 8.)

## II. DISCUSSION

Pursuant to 28 U.S.C. § 1332, a federal district court may hear a civil action (1) that is between citizens of different states and (2) where the matter in controversy exceeds $75,000, exclusive of interest and costs. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006). The parties do not dispute that plaintiffs and defendant are citizens of different states.

Defendant relies on the policy limits of plaintiffs' homeowners policy to show the amount in controversy has been met. (Doc. 1 ¶ 5.) It alleges:

> 5. In addition to diversity of citizenship among the parties to this cause, this Court has jurisdiction under 28 U.S.C. § 1332, and removal is proper pursuant to 28 U.S.C. § 1441, in that there is a sufficient basis that the jurisdictional amount in controversy could be met. In the Complaint, the Stubbs[es] seek an indeterminate amount in damages. The policy of insurance, made the basis of this suit, has dwelling coverage limits of $122,600 and contents limits of $91,500. Paragraph 17 of Plaintiffs' Complaint alleges State Farm wrongfully determined that the damage to the dwelling totaled $31,411.54 and the contents loss totaled $1,151.16. Plaintiffs' Complaint in ¶ 23 further alleges State Farm did not pay the "full claim". Combining the dwelling and contents limits of the policy and subtracting the benefits paid to

> date, according to Plaintiffs' Complaint, the jurisdictional amount in controversy is satisfied.

(*Id*. [footnotes omitted].)

In their Motion to Remand, (doc. 4), plaintiffs contend that defendant has failed to show the requisite amount in controversy. They do not challenge defendant's calculations with regard to the limits of the available coverage under their policy. However, they argue defendant's "conclusory assertions referencing the policy limits" are "plainly insufficient" to establish the amount in controversy because the policy limits are "not an assessment of [plaintiffs'] damages." (*Id*. at 4.) The court agrees.

> If a plaintiff makes "an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). In some cases, this burden requires the removing defendant to provide additional evidence demonstrating that removal is proper. *See*, *e.g.*, *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010). In other cases, however, it may be "facially apparent" from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when "the complaint does not claim a specific amount of damages." *See id*. at 754 (quoting *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001)).

*Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010)(footnote omitted). Of course, this standard does not imply that "a removing defendant is . . . required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka*, 608 F.3d at 754. However, a "conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such

6

an assertion, is insufficient to meet the defendant's burden." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001). The jurisdictional inquiry focuses on how much is in controversy at the time of removal. *Pretka*, 608 F.3d at 751. The plaintiffs' likelihood of success on the merits is "largely irrelevant" to the jurisdictional inquiry because the pertinent question is what is "***in controversy*** in the case, not how much the plaintiffs are ultimately likely to recover." *Pretka*, 608 F.3d at 751 (quoting *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009) (emphasis in both *Amoche* and *Pretka*)).

In some cases, "it may be 'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even 'when the complaint does not claim a specific amount of damages.'" *Roe*, 613 F.3d at 1061 (citing *Pretka*, 608 F.3d at 754 (quoting *Williams*, 269 F.3d at 1319)). Where a defendant argues as much, the court is to examine the pleading in light of its "judicial experience and common sense" to evaluate the amount in controversy. *Roe*, 613 F.3d at 1062. In so doing, the court is authorized to make "reasonable deductions" and draw "reasonable inferences," *id.* at 1061-62, but the court cannot base its exercise of jurisdiction upon mere "conjecture, speculation, or star gazing" regarding the amount in controversy. *Pretka*, 608 F.3d at 754; *see also Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1214-15 (11th Cir. 2007).

The District Court for the Southern District of Florida, in a similar case, stated:

> In determining the amount in controversy in the insurance context, numerous courts have held that "***it is the value of the claim, not the value of the underlying policy, that determines the amount in controversy***." *Kelly v. General Star National Indemnity Co.*, No. 8:07-CV-1143-JDW-TGW, 2007

> WL 3034654, *2 (M.D. Fla. Oct. 16, 2007); *see also Hartford Ins. Co. v. Lou-Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002)(stating that in declaratory judgment cases, ***the jurisdictional amount is measured by the value of the underlying claim and not the face amount of the policy***); *Employers Mutual Casualty Co. v. Parking Towing Co., Inc.*, No. 07-0684-WS-B, 2007 WL 4577705, *2 (S.D. Ala. Dec. 27, 2007)("***a high policy limit does not establish a large amount in controversy for the simple reason that the underlying plaintiff's claim may be for far less than the policy limit***"); *Warth v. State Farm Fire & Casualty Co.*, 792 F. Supp. 101, 103 (M.D. Fla. 1992)("[d]ue to the fact that [the] [p]laintiffs in this case have not plead or represented to this Court the damages they seek, ***the face amount of the [insurance] policy does not control on the issue of the threshold jurisdictional amount***"). Based on this precedent, the Court concludes that the sole evidence provided by Defendant, *i.e.*, the policy limits for Plaintiff's insurance policy, does not meet Defendant's burden of establishing that the jurisdictional amount in controversy has been met.

*Martins v. Empire Indem. Ins. Co.*, No. 08-60004-CIV, 2008 WL 783762, *2 (S.D. Fla. Mar. 21, 2008)(emphasis added). Unless the Complaint asks for the policy limits or the court, relying on judicial experience and common sense, determines that plaintiffs' damages will likely meet or exceed the policy limits, a removing defendant must make some showing as to the amount plaintiffs are likely to recover if successful.

In this case, the court has no evidence or information as to the cost to repair or replace plaintiffs' home and personal property. The policy explicitly recognizes that policy limits may not accurately reflect the actual cost to repair or replace the covered property, and explicitly limits plaintiffs' recovery to actual cash value of their home and contents unless and until the home and contents are repaired or replaced. As the Supreme Court of Alabama has recognized, "actual cash value [is] nearly always . . . less than replacement costs." *Huggins v. Hanover Ins. Co.*, 423 So. 2d 147, 151 (Ala. 1982). Therefore, plaintiffs' request

8

for the full amount of coverage is not synonymous with a claim for policy limits in a replacement cost policy.

In this case, the policy limits represent the outer limits of defendant's liability under the contract; the policy limits do not represent the "actual cash value" or cost to replace or repair the home and personal property.

Therefore, the issue is whether the court, relying on its judicial experience and common sense, can determine whether plaintiffs' claims satisfy the jurisdictional amount in controversy. The court is not confident that the cost to repair or replace the home exceeds the jurisdictional limit. The court has no intuitive sense of the actual cash value of plaintiffs' home or the cost to repair or replace that home or any lost contents. Therefore, the court cannot say with conviction that the amount in controversy in plaintiff's breach of contract claim is more than $108,987 – the amount already paid by defendant plus $75,000.

However, the court's judicial experience informs its decision that the amount in controversy as to plaintiffs' bad faith claim exceeds $75,000. The Complaint alleges that defendant waited four months to pay plaintiffs any amount under the policy. (Doc. 1-2 ¶ 17.) Also, plaintiffs allege defendant "misrepresented the facts and the content of the Policy in a bad faith effort to refuse full payment," (*id*. ¶ 19), and that defendant "intentionally, purposefully, and maliciously delayed the claims process and refused to approve and pay this claim in the absence of any reasonably legitimate or arguable reason for that refusal." (*Id* at ¶ 20.) And, they contend defendant had no legitimate reason for refusing to pay their claim

and/or it intentionally or recklessly failed to investigate their claim. (*Id*. ¶¶ 28-29.) These allegations provide a sufficient basis for the court to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations . . . to determine whether it is facially apparent that [this] case is removable." *See Roe*, 613 F.3d at 1061-62 (quoting *Pretka*, 608 F.3d at 754)(internal quotations omitted). Based on the court's judicial experience and common sense, the court finds that, based on plaintiffs' bad faith claim, the amount in controversy exceeds $75,000.[3]

## CONCLUSION

For the foregoing reasons, the court is of the opinion that the amount in controversy exceeds $75,000; therefore, plaintiffs' Motion to Remand will be denied. An Order denying plaintiffs' Motion to Remand will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 8th day of March, 2013.

*/s/ Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

---

[3]Nevertheless, because the court's determination of the amount in controversy is not based on a specific amount claimed by plaintiffs in their Complaint or on evidence submitted by defendant, the court will allow plaintiffs the opportunity to submit evidence, in the form of a stipulation, signed by plaintiffs and their counsel, that they are not claiming damages over $74,999, and that they will not accept any award over $75,000. *See Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000). Plaintiffs may file such a stipulation, together with a Motion to Reconsider, no later than 10 days after entry of the Order denying their Motion to Remand.